E-FILED  2025 NOV 04 12:52 PM WAPELLO - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR WAPELLO COUNTY

| | |
|---|---|
| ZACH SIMONSON, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF OTTUMWA, <br><br> Defendant. | CASE NO. <br><br><br><br> **ORIGINAL NOTICE** |

TO THE ABOVE-NAMED DEFENDANT:    CITY OF OTTUMWA

      You are notified that a Petition at Law has been filed in the office of the clerk of this court naming you as the defendant in this action. A copy of the Petition is attached to this notice. The attorneys for the plaintiff are Amy Beck and Ashley Griffin of Fiedler Law Firm, P.L.C., whose address is 8831 Windsor Parkway, Johnston, Iowa, 50131. Their phone number is (515) 254-1999; facsimile number (515) 254-9923.

      You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Wapello County. If you do not, judgment by default may be rendered against you for the relief demanded in the petition.

      If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at (641) 684-6502 (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).

      CLERK OF COURT
      Wapello County Courthouse
      Ottumwa, Iowa

1

E-FILED  2025 NOV 04 3:18 PM WAPELLO - CLERK OF DISTRICT COURT

# Iowa Judicial Branch

*Case No.* **LALA107083**
*County* **Wapello**

*Case Title*   SIMONSON, ZACHARY VS CITY OF OTTUMWA

You must file your Appearance and Answer on the Iowa Judicial Branch eFile System, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless the court has excused you from filing electronically (*see* Iowa Court Rule 16.302).

Register for the eFile System at www.iowacourts.state.ia.us/Efile to file and view documents in your case and to receive notices from the court.

For general rules and information on electronic filing, refer to the Iowa Rules of Electronic Procedure in chapter 16 of the Iowa Court Rules at www.legis.iowa.gov/docs/ACO/CourtRulesChapter/16.pdf.

Court filings are public documents and may contain personal information that should always be kept confidential. For the rules on protecting personal information, refer to Division VI of chapter 16 of the Iowa Court Rules and to the Iowa Judicial Branch website at www.iowacourts.gov/for-the-public/representing-yourself/protect-personal-information/.

*Scheduled Hearing:*

If you need assistance to participate in court due to a disability, call the disability access coordinator at **(641) 684-6502** . Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). For more information, see www.iowacourts.gov/for-the-public/ada/. **Disability access coordinators cannot provide legal advice.**

*Date Issued* **11/04/2025 03:18:32 PM**



*District Clerk of Court or/by Clerk's Designee of* Wapello    *County*
**/s/ Kayla Bloom**

EXHIBIT A - Page 2

E-FILED  2025 NOV 04 12:52 PM WAPELLO - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR WAPELLO COUNTY

| ZACHARY SIMONSON,<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF OTTUMWA,<br><br>    Defendant. | NO. LALA10708<br><br><br><br>**PETITION FOR WRIT OF CERTIORARI** |
|---|---|

**COMES NOW** Plaintiff Zachary Simonson and for his cause of action states the following:

### INTRODUCTION

1. Plaintiff Zachary Simonson ("Zach") seeks judicial review via a Writ of Certiorari of the Defendant City of Ottumwa's failure to comply with Iowa Code Chapter 35C. He also asserts retaliation claims under state and federal law.

2. Zach is a resident of Wapello County, Iowa.

3. Zach is also a "veteran" as defined in Iowa Code Chapter 35C and is entitled to the employment protections afforded under that chapter.

4. Defendant City of Ottumwa is a political subdivision of the State of Iowa and is located in Wapello County.

5. The acts of which Plaintiff complains occurred in Wapello County, Iowa.

### FACTUAL BACKGROUND

6. Zach is a veteran who holds civil service preference under Iowa Code Chapter 35C.

7. In February 2017, Zach applied for employment with Defendant and shortly thereafter was hired as a seasonal Housing and Code Enforcement Inspector.

8. In October 2017, Zach transitioned to full-time employment.

9. On August 6, 2018, Zach was appointed to the role of Building Inspector.

1

10. On July 8, 2019, Defendant promoted Zach to a Planner I position.

11. In February 2021, Defendant appointed Zach as Interim Director of Community Development.

12. On May 13, 2021, Zach's appointment to Director of Community Development was made permanent.

13. On May 18, 2021, the Ottumwa City Council formally approved Zach's appointment as Director of Community Development.

14. In his role as Director of Community Development, Zach supervised key departments including building code enforcement, the landfill, and the recycling center.

15. Zach's duties included preparing budgets, hiring and disciplining staff, and managing approximately 18 employees.

16. He was responsible for presenting policies and procedures to City boards such as the Plan and Zoning Commission and the Historic Preservation Commission.

17. Zach regularly presented ordinances and resolutions to the Ottumwa City Council related to zoning, building codes, grants, and economic development.

18. His duties also involved reviewing site plans, building designs, and proposed economic development incentives.

19. Zach reported directly to City Administrator Phil Rath, who assumed that position in 2020.

20. Zach's position did not include executive or confidential advisory duties.

21. Zach did not hold a deputy or assistant city administrator title, nor was he assigned authority to act on Rath's behalf during absences.

22. When Rath was unavailable, his responsibilities were delegated to others, not Zach.

23. Zach's role was professional and operational in nature, not political or discretionary.

24. The City Council kept Zach's role separate from Rath, rejecting a resolution to promote Zach to an Assistant City Administrator.

25. Zach's job description, appointment documents, and performance history do not designate his position as "strictly confidential" as contemplated under Iowa Code Chapter 35C.

26. Prior to December 2024, Zach had received only minor disciplinary actions and had received no negative performance evaluations.

27. Until late 2024, Zach consistently received positive feedback on his work from colleagues and Rath.

28. Beginning in January 2024, at weekly Department Head meetings, Rath and Human Resources Director Barb Codjoe began making disparaging remarks about Councilmember Kevin Caviness.

29. Rath speculated that Caviness had dementia or another impairment, and Codjoe questioned whether Caviness could complete his term.

30. Zach was disturbed by these remarks and attempted to redirect discussions toward proactive engagement with the Council.

31. Between October and December 2024, Defendant conducted an internal investigation into an anonymous complaint allegedly filed against Zach, but Defendant did not inform Zach of the nature or scope of the investigation.

32. Zach's staff, including a Building and Code Clerk, were interviewed in an aggressive manner by Finance Director Cole O'Donnell and Codjoe.

33. The clerk came to Zach in tears, reporting that she felt terrified and was told not to speak about the interrogation.

34. Zach reassured the clerk and assumed responsibility for any departmental concerns.

35. On November 12, 2024—immediately following Veterans Day—Defendant interviewed Zach.

36. During the interview, Zach objected to the investigative process, calling it humiliating and unnecessary, and decrying the harm it had caused his staff.

37. On December 19, 2024, Zach lodged a formal complaint with Rath and Codjoe, reporting that Cole O'Donnell had brought a bottle of Crown Royal to a City meeting, in violation of the City's zero-tolerance policy on drugs and alcohol.

38. On December 30, 2024, the day before Zach's birthday, Defendant unexpectedly presented him with a Performance Improvement Plan ("PIP") authored by Rath and Codjoe.

39. The PIP lacked specific charges, did not identify violations of policy, and was presented without any prior notice or discussion.

40. During this time, O'Donnell continued making inappropriate comments, including remarks in January 2025 about "boxing in" State Senator Webster's ears during meetings about the state legislature.

41. Zach again redirected conversations toward appropriate policy-focused discussions.

42. On January 15, 2025, Zach informed Rath that he had applied for the City Manager position in Oskaloosa due to his concerns about the PIP process.

43. Rath downplayed the PIP as a "departmental" improvement tool, claimed it was not disciplinary, and discouraged Zach from applying elsewhere.

44. At the same meeting, Zach submitted a 15-day progress memo responding to the PIP.

45. Rath responded by saying he would issue the progress memos himself.

46. In a memo dated January 24, 2025, Rath acknowledged that Zach had made "progress" on the PIP.

47. On February 9, 2025, Rath delivered a new memo dated February 8, which purported to show further progress on the PIP.

48. On February 13, 2025, Rath issued another memo dated February 10 in response to Zach's progress memo.

49. The February 13 memo failed to address many of Zach's concerns, was incomplete, and omitted key facts about the PIP and investigation.

50. On February 20, 2025, Zach informed Rath that he planned to notify the Ottumwa City Council that he was a finalist for the Oskaloosa City Manager position.

51. He intended to explain that he enjoyed his job but felt forced to look for another job due to the PIP and hostile work environment caused by Codjoe and O'Donnell.

52. Rath urged Zach not to include the PIP in his message to the Council.

53. On February 21, 2025, Zach emailed the Council and disclosed his finalist status, the PIP, and his belief that he was being mistreated.

54. In his email, Zach criticized the administration's handling of the PIP and the prior investigation.

55. On March 3, 2025, Zach prepared a memo proposing potential budget cuts and revenue enhancements in the Building and Code Division, which O'Donnell praised and requested to share with other department heads.

56. That same day, Zach spoke with Landfill Supervisor Lori Creech regarding operations.

57. Zach was frustrated with Creech but spoke in a professional tone and manner.

58. The landfill had been closed that day due to weather without Zach's authorization.

59. Creech later alleged Zach was screaming and rude during their call.

60. Zach has consistently denied yelling at Creech.

5

61. On March 12, 2025, Rath and Codjoe summoned Zach for an interview about the landfill call.

62. During the March 12 interview, it became clear to Zach that Codjoe entered the interview with a predetermined outcome—Zach would be fired.

63. On March 13, 2025, Defendant terminated Zach's employment, providing no notice, charges, or hearing as required under Iowa Code Chapter 35C.

64. The City offered Zach the option to resign in lieu of termination, which he declined.

65. On March 14, 2025, Zach called Codjoe to inquire about the date of his final paycheck and was told it would be March 28.

66. On March 15, 2025, Zach's wife, Kristyn Russell, spoke with the Chair of the Civil Service Commission at a public event.

67. The Chair expressed frustration with Codjoe's pattern of bypassing the Commission in terminating department heads.

68. On March 17, 2025, local media including the Ottumwa Courier and Ottumwa Post reported on Zach's termination and the broader controversy.

69. On March 18, 2025, Zach addressed the Ottumwa City Council during the public forum, thanking staff and the Council for the opportunity to serve.

70. Former Mayor Tom Lazio also spoke at the meeting and expressed concern about the administration's treatment of department heads.

71. On August 24, 2025, Zach and Kristyn submitted a Downtown Revitalization Grant application via email to the City of Ottumwa.

72. The next day, City Coordinator Jake Rusch confirmed receipt of the application

73. On September 2, 2025, Kristyn emailed Rusch asking about the expected timeline for review of the grant application.

6

74. Rusch replied the following day that he was working with the Finance Department to allocate grant funds to the program and that the application would be reviewed once those funds were delegated.

75. On September 22, 2025, after hearing nothing further, Kristyn emailed Rusch again to request a status update.

76. Later that day, Rusch responded that the application had been referred to Amal Eltahir, Zach's replacement.

77. On September 24, 2025, after receiving no response from Eltahir, Kristyn emailed her asking if she had time for a phone call to discuss the review process.

78. Eltahir replied and scheduled a call for 11:15 a.m. that same day.

79. During the call, Eltahir stated that there were no remaining grant funds and that it was unclear whether the program was currently funded.

80. Eltahir said she was new to the role, had no clear guidance on the program, and did not know who was responsible for reviewing the applications.

81. Later that day, Kristyn and Zach requested that their application be sent to the Downtown Revitalization Grant Review Committee so their project at 317 E. Main Street could proceed, as committee review and approval were required to qualify for grant funds.

82. Eltahir agreed to seek direction on how to move forward and later that day sent the application to the committee.

83. Around this time, Zach learned that Rath had discussed the grant application at a meeting of the Greater Ottumwa Partners in Progress Board of Directors where a member of the Grant Review team was present.

84. During that meeting, Rath stated that he believed Zach's project had received enough support and that a grant should not be awarded.

85. Rath's comments represented improper and unprecedented interference with the grant review process that Zach had never previously witnessed during his time with the City.

86. On September 26, 2025, Eltahir called Kristyn to notify her that the committee had approved the grant and that they had a "green light to move forward."

87. Following the call, Kristyn emailed Eltahir to request written confirmation of the committee's approval.

88. On September 30, 2025, after receiving no reply, Kristyn emailed Eltahir again to follow up on their request for written confirmation.

89. On October 1, 2025, Eltahir emailed Kristyn confirming that the Downtown Revitalization Grant Review Committee had approved the application but said the recommendation would now go to the City Council for final approval.

90. No previous downtown revitalization grants had been submitted for Council approval because the Council had already adopted policies delegating review authority to the Grant Review Committee.

91. On October 2, 2025, Councilmember Cara Galloway requested copies of Kristyn and Zach's correspondence with Eltahir concerning the grant process, which they provided.

92. On October 3, 2025, the City of Ottumwa posted the Council meeting packet on its public website which included the unredacted grant application containing Kristyn's W-9 form, social security number, tax identification number, and personal residence information.

93. Kristyn and Zach contacted Councilmember Galloway about the error.

94. Galloway shared that she was in the City Clerk's office working to remove the personal information from the public website.

95. The packet was ultimately removed and reissued with proper redactions.

96. On October 7, 2025, the City Council approved Zach's grant application during its regular meeting.

97. Several councilmembers questioned why Zach's application was subjected to a different process than prior grants.

98. Finance Director Cole O'Donnell made false statements on the record claiming prior grants were illegally reviewed without Council approval and asserting that delegation of review authority would not meet audit standards.

99. Councilmember Galloway corrected those statements, noting that the Council had already adopted a policy delegating review authority and that the program had previously passed audits without findings.

100. O'Donnell's statements were defamatory and meant to discredit Zach's prior work for the City.

101. The meeting was recorded and remains publicly available on the City's official YouTube channel.

102. On October 20, 2025, Zach and Kristyn signed and notarized the final grant agreement with the City of Ottumwa after facing substantially more scrutiny and procedural hurdles than prior applicants faced due to Zach's previous complaints to the City identified herein.

103. At all times relevant to this action, Cole O'Donnell was an employee and agent of the Defendant City of Ottumwa, acting within the scope of his employment and authority.

104. At all times relevant to this action, Phil Rath was an employee and agent of the Defendant City of Ottumwa, acting within the scope of his employment and authority.

105. At all times relevant to this action, Barb Codjoe was an employee and agent of the Defendant City of Ottumwa, acting within the scope of her employment and authority.

**COUNT I**
**VIOLATION OF IOWA'S VETERAN'S PREFERENCE ACT**

## IOWA CODE CHAPTER 35C

106. Plaintiff repleads paragraphs 1 through 105 as if fully set forth herein.

107. Iowa Code section 35C.6 provides:

No person holding a public position by appointment or employment, and belonging to any of the classes of persons to whom a preference is granted under this chapter, shall be removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, and with the right of such employee or appointee to a review by a writ of certiorari or at such person's election, to judicial review in accordance with the terms of the Iowa administrative procedure Act, chapter 17A, if that is otherwise applicable to their case.

108. At all relevant times, Plaintiff's employment was within the scope of protection provided to public employees under Iowa Code Chapter 35C.

109. At no time during his employment did Plaintiff hold a strictly confidential or policy-making position that would exclude him from Chapter 35C's protections. Plaintiff's job responsibilities were managerial and departmental, not advisory or discretionary. He did not act as a deputy, assistant, or executive proxy to the City Administrator, nor did he have delegated authority to act on the Administrator's behalf.

110. Defendant terminated Plaintiff's employment effective March 13, 2025, without providing him a pre-termination hearing, due notice, or an opportunity to respond to stated charges of incompetency or misconduct.

111. The City was aware of Plaintiff's veteran status prior to and during his employment, and no lawful exemption to the protections of Iowa Code Chapter 35C applied.

112. The City of Ottumwa's failure to provide Plaintiff a hearing prior to his termination constitutes a direct violation of Iowa Code section 35C.6.

113. As a result of the City's unlawful termination of his employment in violation of Iowa Code Chapter 35C, Plaintiff has suffered lost wages, lost benefits, and other damages.

WHEREFORE, Plaintiff Zach Simonson respectfully requests that the Court issue a writ of certiorari or otherwise provide judicial review under Iowa Code section 35C.6; declare Defendant's termination of Plaintiff violated Iowa Code Chapter 35C; reinstate Plaintiff to his prior position or, in the alternative, award appropriate backpay and front pay; order compensation for lost wages, benefits, and other damages; award costs and reasonable attorney fees as allowed by law; and grant all such further relief as the Court deems just and equitable.

## COUNT II
## VIOLATION OF DUE PROCESS RIGHTS
## 42 U.S.C. § 1983

114. Plaintiff repleads paragraphs 1 through 113 as if fully set forth herein.

115. At all times relevant to this action, Defendant was acting under color of state law.

116. Plaintiff had a protected property interest in his continued public employment as Director of Community Development by virtue of Iowa Code Chapter 35C, which entitled him to notice, an opportunity to be heard, and a hearing prior to any termination based on allegations of misconduct or incompetency.

117. Defendant deprived Plaintiff of his right to procedural due process as guaranteed by the Fourteenth Amendment to the United States Constitution.

118. Specifically, Defendant terminated Plaintiff's employment on March 13, 2025, without prior notice, without informing him of any charges against him, and without affording him any meaningful opportunity to respond or be heard. Plaintiff was not provided with a hearing or any form of pre-termination process.

119. The actions taken by Defendant were not the result of any valid governmental interest, but were instead arbitrary, capricious, and retaliatory in nature.

120. Defendant's failure to provide constitutionally required due process protections constitutes a violation of 42 U.S.C. § 1983.

121. As a result of the Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff Zach Simonson respectfully requests that the Court enter judgment in his favor and against Defendant for compensatory damages in an amount to fully and fairly compensate him for his losses, including lost wages and benefits; for prejudgment and postjudgment interest as allowed by law; for costs of this action including reasonable attorney fees pursuant to 42 U.S.C. § 1988(b); and for such other legal or equitable relief as the Court deems just and proper.

## COUNT III
## FIRST AMENDMENT – FREE SPEECH VIOLATION
## 42 U.S.C. § 1983

122. Plaintiff repleads paragraphs 1 through 121 as if fully set forth herein.

123. Plaintiff engaged in constitutionally protected speech under the First Amendment to the United States Constitution when he communicated with the Ottumwa City Council in February 2025.

124. Specifically, on February 21, 2025, Plaintiff emailed the City Council to inform them that he had been placed on a PIP and was seeking employment elsewhere solely because of that action.

125. Plaintiff expressed his serious objections to the PIP and to the investigation that preceded it, and he did so as a private citizen addressing a matter of public concern: the conduct and transparency of City administration in managing personnel.

126. Prior to that communication, Plaintiff had informed Rath of his intention to be transparent with the Council about the PIP and his reasons for seeking other employment.

127. Rath explicitly requested that Plaintiff not discuss his PIP with the Council.

128. Plaintiff nevertheless exercised his First Amendment rights to speak openly and truthfully about the administration's treatment of him and its handling of personnel issues affecting public confidence in city government.

129. Shortly after Plaintiff's communication to the Council, Defendant undertook a series of adverse actions culminating in his termination on March 13, 2025.

130. These actions were motivated, at least in substantial part, by Plaintiff's protected expression.

131. Defendant's conduct amounts to unlawful retaliation in violation of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

132. As a result of the Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff Zach Simonson respectfully requests that the Court enter judgment in his favor and against Defendant for compensatory damages in an amount sufficient to fully and fairly compensate him for his injuries; for prejudgment and postjudgment interest; for reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988(b); and for all such other legal and equitable relief as the Court deems just and appropriate.

## COUNT IV
## RETALIATION FOR WHISTLEBLOWING
## VIOLATION OF IOWA CODE § 70A.29

133. Plaintiff repleads paragraphs 1 through 132 as if fully set forth herein.

134. Plaintiff was a public employee of a political subdivision of the State of Iowa entitled to protection under Iowa Code section 70A.29.

135. As set forth above, Plaintiff objected to the City's investigative process, reported violations of City policy, and complained about mismanagement of City operations and abuses of authority by senior officials.

136. Plaintiff reported these concerns to public officials.

137. Each of these disclosures constituted protected whistleblower activity under Iowa Code section 70A.29.

138. Defendant violated Iowa Code section 70A.29 by disciplining and firing Plaintiff as a reprisal for his protected disclosures.

139. As a direct and proximate result of Defendant's acts of retaliation, Plaintiff has suffered damages including but not limited to lost wages and benefits.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate him for his injuries and damages, for appropriate equitable and injunctive relief, treble damages, including but not limited to reinstatement, for attorney fees, litigation expenses, prejudgment and postjudgment interest, the costs of this action, and for such other relief as may be just in the circumstances.

## JURY DEMAND

COMES NOW the Plaintiff and requests a trial by jury.

Respectfully submitted,

/s/ Amy Beck
FIEDLER LAW FIRM, P.L.C.
Amy Beck AT0013022
amy@employmentlawiowa.com
Ashley Griffin AT0015719
ashley@employmentlawiowa.com
8831 Windsor Parkway
Johnston, IA 50131
Telephone: (515) 254-1999
Facsimile: (515) 254-9923
ATTORNEYS FOR PLAINTIFF