IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

ZACHARY SIMONSON,

        Plaintiff,

vs.

CITY OF OTTUMWA,

        Defendant.

No.  4:25-cv-474

**ANSWER TO PETITION FOR WRIT OF CERTIORARI**

Defendant, City of Ottumwa, Iowa ("Defendant" or "City"), for its Answer to Plaintiff's Petition for Writ of Certiorari, states:

## <u>INTRODUCTION</u>

1.    Plaintiff Zachary Simonson ("Zach") seeks judicial review via a Writ of Certiorari of the Defendant City of Ottumwa's failure to comply with Iowa Code Chapter 35C. He also asserts retaliation claims under state and federal law.

<u>Answer</u>: This is a legal statement to which no response is required. However, if a response is required, denied.

2.    Zach is a resident of Wapello County, Iowa.

<u>Answer</u>: Admitted.

3.    Zach is also a "veteran" as defined in Iowa Code Chapter 35C and is entitled to the employment protections afforded under that chapter.

<u>Answer</u>:  Admitted.

4.    Defendant City of Ottumwa is a political subdivision of the State of Iowa and is located in Wapello County.

Answer: Admitted.

5.      The acts of which Plaintiff complains occurred in Wapello County, Iowa.

Answer: Admitted the Plaintiff was employed in Wapello County, Iowa by

Defendant. Denied that Defendant committed the acts about which Plaintiff complains.

## FACTUAL BACKGROUND

6.      Zach is a veteran who holds civil service preference under Iowa Code

Chapter 35C.

Answer:  Admitted.

7.      In February 2017, Zach applied for employment with Defendant and shortly

thereafter was hired as a seasonal Housing and Code Enforcement Inspector.

Answer: Denied. Plaintiff's initial application with the City was April 20, 2017. He

was hired as a Health Department Intern. He applied for the Housing Code Enforcement

Inspector in the Health Department in August 2017, and the City hired him October 23,

2017.

8.      In October 2017, Zach transitioned to full-time employment.

Answer: Admitted.

9.      On August 6, 2018, Zach was appointed to the role of Building Inspector.

 Answer: Admitted.

10.      On July 8, 2019, Defendant promoted Zach to a Planner I position.

Answer: Admitted.

11.      In February 2021, Defendant appointed Zach as Interim Director of

Community Development.

Answer: Admitted.

12.     On May 13, 2021, Zach's appointment to Director of Community Development was made permanent.

<u>Answer</u>: Denied. This was an offer to make the position permanent.

13.     On May 18, 2021, the Ottumwa City Council formally approved Zach's appointment as Director of Community Development.

<u>Answer</u>:  Denied. This was the date the recommendation was made to the City. The appointment was effective May 23, 2021.

14.     In his role as Director of Community Development, Zach supervised key departments including building code enforcement, the landfill, and the recycling center.

<u>Answer</u>:  Admitted.

15.     Zach's duties included preparing budgets, hiring and disciplining staff, and managing approximately 18 employees.

<u>Answer</u>:  Admitted.

16.     He was responsible for presenting policies and procedures to City boards such as the Plan and Zoning Commission and the Historic Preservation Commission.

<u>Answer</u>: Admitted.

17.     Zach regularly presented ordinances and resolutions to the Ottumwa City Council related to zoning, building codes, grants, and economic development.

<u>Answer</u>: Admitted.

18.     His duties also involved reviewing site plans, building designs, and proposed economic development incentives.

<u>Answer</u>:  Admitted.

19.    Zach reported directly to City Administrator Phil Rath, who assumed that position in 2020.

Answer: Admitted that Zach reported directly to City Administrator Phil Rath following his appointment to Interim Director of Community Development until his separation from the City.

20.    Zach's position did not include executive or confidential advisory duties.

Answer: Denied.

21.    Zach did not hold a deputy or assistant city administrator title, nor was he assigned authority to act on Rath's behalf during absences.

Answer: Admitted that Zach did not hold these titles, but denied to the extent that Zach engaged in confidential and executive functions as directed by Mr. Rath.

22.    When Rath was unavailable, his responsibilities were delegated to others, not Zach.

Answer: Denied. When unavailable, Mr. Rath's functions and responsibilities could be delegated to numerous employees, including Zach.

23.    Zach's role was professional and operational in nature, not political or discretionary.

Answer: Admitted the role was professional and included operational elements, but denied that the role was not political or discretionary.

24.    The City Council kept Zach's role separate from Rath, rejecting a resolution to promote Zach to an Assistant City Administrator.

Answer: Admitted that Zach's role was separate from the City Administrator's role, and that the City Council rejected a proposal to promote Zach to Assistant City

Administrator. Denied to the extent this allegation alleges that Zach's role was not political or discretionary.

25.     Zach's job description, appointment documents, and performance history do not designate his position as "strictly confidential" as contemplated under Iowa Code Chapter 35C.

<u>Answer</u>: Denied. Further, Zach's job description and appointment documents speak for themselves.

26.     Prior to December 2024, Zach had received only minor disciplinary actions and had received no negative performance evaluations.

<u>Answer</u>: Admitted.

27.     Until late 2024, Zach consistently received positive feedback on his work from colleagues and Rath.

<u>Answer</u>: Admitted Zach received positive feedback from Mr. Rath until late 2024, but denied to the extent this implies Mr. Rath did not provide any negative or critical feedback prior to late 2024. Denied for lack of knowledge or information with respect to the feedback Zach received from "colleagues."

28.     Beginning in January 2024, at weekly Department Head meetings, Rath and Human Resources Director Barb Codjoe began making disparaging remarks about Councilmember Kevin Caviness.

<u>Answer</u>: Denied, there is no such council member. To the extent that this allegation is about Keith Caviness, also denied.

29.     Rath speculated that Caviness had dementia or another impairment, and Codjoe questioned whether Caviness could complete his term.

Answer: Denied to the extent that this alleges Mr. Rath and Ms. Codjoe were gossiping about Mr. Caviness. Admitted that Mr. Rath expressed concerns about Mr. Caviness' health.

30.     Zach was disturbed by these remarks and attempted to redirect discussions toward proactive engagement with the Council.

Answer: Denied for lack of knowledge or information about Zach's alleged feelings. Denied that Zach "attempted to redirect discussions toward proactive engagement with the Council."

31.     Between October and December 2024, Defendant conducted an internal investigation into an anonymous complaint allegedly filed against Zach, but Defendant did not inform Zach of the nature or scope of the investigation.

Answer: Denied. Rather, Defendant received an anonymous complaint against Zach on October 8, 2024. The investigation began that same day. The HR Director provided information to Zach about the complaint at a meeting on November 18, 2024.

32.     Zach's staff, including a Building and Code Clerk, were interviewed in an aggressive manner by Finance Director Cole O'Donnell and Codjoe.

Answer: Denied.

33.     The clerk came to Zach in tears, reporting that she felt terrified and was told not to speak about the interrogation.

Answer:  Denied for lack of information.

34.     Zach reassured the clerk and assumed responsibility for any departmental concerns.

Answer: Denied for lack of information.

35.     On November 12, 2024—immediately following Veterans Day—Defendant interviewed Zach.

Answer: Denied. The HR Director interviewed Zach on November 18, 2024.

36.     During the interview, Zach objected to the investigative process, calling it humiliating and unnecessary, and decrying the harm it had caused his staff.

Answer: Denied.

37.     On December 19, 2024, Zach lodged a formal complaint with Rath and Codjoe, reporting that Cole O'Donnell had brought a bottle of Crown Royal to a City meeting, in violation of the City's zero-tolerance policy on drugs and alcohol.

Answer: Admitted that Mr. O'Donnell brought an unopened bottle of alcohol to a City meeting as a gift. Admitted it was in violation of the policy.

38.     On December 30, 2024, the day before Zach's birthday, Defendant unexpectedly presented him with a Performance Improvement Plan ("PIP") authored by Rath and Codjoe.

Answer: Admitted that Mr. Rath authored and presented Zach the PIP on December 30, 2024. Denied that it was unexpected and denied that it was authored and presented by Ms. Codjoe.

39.     The PIP lacked specific charges, did not identify violations of policy, and was presented without any prior notice or discussion.

Answer: Denied. The document speaks for itself.

40.     During this time, O'Donnell continued making inappropriate comments, including remarks in January 2025 about "boxing in" State Senator Webster's ears during meetings about the state legislature.

Answer: Denied for lack of knowledge or information.

41.    Zach again redirected conversations toward appropriate policy-focused discussions.

Answer: Denied for lack of knowledge or information.

42.    On January 15, 2025, Zach informed Rath that he had applied for the City Manager position in Oskaloosa due to his concerns about the PIP process.

Answer: Admitted.

43.    Rath downplayed the PIP as a "departmental" improvement tool, claimed it was not disciplinary, and discouraged Zach from applying elsewhere.

Answer: Denied Mr. Rath downplayed the PIP or discouraged Zach from applying elsewhere. Admitted that Mr. Rath described the PIP as an improvement tool.

44.    At the same meeting, Zach submitted a 15-day progress memo responding to the PIP.

Answer: Admitted.

45.    Rath responded by saying he would issue the progress memos himself.

Answer: Denied. Mr. Rath stated that Zach could prepare his own memos, but Mr. Rath would be performing his own reviews of Zach's progress on the PIP.

46.    In a memo dated January 24, 2025, Rath acknowledged that Zach had made "progress" on the PIP.

Answer: Admitted.

47.    On February 9, 2025, Rath delivered a new memo dated February 8, which purported to show further progress on the PIP.

Answer: Admitted.

48.    On February 13, 2025, Rath issued another memo dated February 10 in response to Zach's progress memo.

<u>Answer</u>: Admitted.

49.    The February 13 memo failed to address many of Zach's concerns, was incomplete, and omitted key facts about the PIP and investigation.

<u>Answer</u>: Denied. The document speaks for itself.

50.    On February 20, 2025, Zach informed Rath that he planned to notify the Ottumwa City Council that he was a finalist for the Oskaloosa City Manager position.

<u>Answer</u>: Admitted.

51.    He intended to explain that he enjoyed his job but felt forced to look for another job due to the PIP and hostile work environment caused by Codjoe and O'Donnell.

<u>Answer</u>: Admitted that Zach informed Mr. Rath that he was looking for another job because of the PIP. Denied that Zach made any claim about a "hostile work environment caused by Codjoe and O'Donnell."

52.    Rath urged Zach not to include the PIP in his message to the Council.

<u>Answer</u>: Denied.

53.    On February 21, 2025, Zach emailed the Council and disclosed his finalist status, the PIP, and his belief that he was being mistreated.

<u>Answer</u>: Denied the date of the email was February 21, 2025. Rather, Zach emailed the council on February 20, 2025, about his finalist status and the PIP. Denied that Zach stated a "belief that he was being mistreated." The email speaks for itself.

54.    In his email, Zach criticized the administration's handling of the PIP and the prior investigation.

<u>Answer</u>: Admitted that Zach stated he had "significant frustrations with the content of the [PIP] and the investigation that preceded it…" The emails speak for themselves.

55.    On March 3, 2025, Zach prepared a memo proposing potential budget cuts and revenue enhancements in the Building and Code Division, which O'Donnell praised and requested to share with other department heads.

<u>Answer</u>: Denied.  Zach issued the Memo on February 26, 2025 and O'Donnell forwarded the memo to staff on February 27, 2025.

56.    That same day, Zach spoke with Landfill Supervisor Lori Creech regarding operations.

<u>Answer</u>: Denied for lack of knowledge or information regarding any communications between Zach and the Landfill Supervisor on March 3, 2025.

57.    Zach was frustrated with Creech but spoke in a professional tone and manner.

<u>Answer</u>: Denied.

58.    The landfill had been closed that day due to weather without Zach's authorization.

<u>Answer</u>: Admitted the landfill had been closed due to weather on March 5, 2025, without Zach's input. Denied to the extent that Ms. Creech needed Zach's authorization to close the landfill when she had Mr. Rath's authorization.

59.    Creech later alleged Zach was screaming and rude during their call.

<u>Answer</u>: Admitted.

60.     Zach has consistently denied yelling at Creech.

<u>Answer</u>: Admitted.

61.     On March 12, 2025, Rath and Codjoe summoned Zach for an interview about the landfill call.

<u>Answer</u>: Admitted that Mr. Rath and Ms. Codjoe summoned Zach for an interview on this date, denied that it was solely about the landfill call.

62.     During the March 12 interview, it became clear to Zach that Codjoe entered the interview with a predetermined outcome—Zach would be fired.

<u>Answer</u>: Denied for lack of information as to what "became clear to Zach." Denied that Ms. Codjoe "entered the interview with a predetermined outcome."

63.     On March 13, 2025, Defendant terminated Zach's employment, providing no notice, charges, or hearing as required under Iowa Code Chapter 35C.

<u>Answer</u>: Admitted Defendant terminated Zach's employment on this date. Denied that he did not receive notice, charges, or a hearing as required under Iowa Code Chapter 35C.

64.     The City offered Zach the option to resign in lieu of termination, which he declined.

<u>Answer</u>: Admitted.

65.     On March 14, 2025, Zach called Codjoe to inquire about the date of his final paycheck and was told it would be March 28.

<u>Answer</u>: Admitted.

66.     On March 15, 2025, Zach's wife, Kristyn Russell, spoke with the Chair of the Civil Service Commission at a public event.

Answer: Denied for lack of knowledge or information.

67.    The Chair expressed frustration with Codjoe's pattern of bypassing the Commission in terminating department heads.

Answer: Denied for lack of knowledge or information.

68.    On March 17, 2025, local media including the Ottumwa Courier and Ottumwa Post reported on Zach's termination and the broader controversy.

Answer: Admitted the local media reported on Zach's termination on or around March 17, 2025. Denied the stories contained reporting on a "broader controversy."

69.    On March 18, 2025, Zach addressed the Ottumwa City Council during the public forum, thanking staff and the Council for the opportunity to serve.

Answer: Admitted.

70.    Former Mayor Tom Lazio also spoke at the meeting and expressed concern about the administration's treatment of department heads.

Answer: Admitted.

71.    On August 24, 2025, Zach and Kristyn submitted a Downtown Revitalization Grant application via email to the City of Ottumwa.

Answer: Admitted.

72.    The next day, City Coordinator Jake Rusch confirmed receipt of the application.

Answer: Admitted.

73.    On September 2, 2025, Kristyn emailed Rusch asking about the expected timeline for review of the grant application.

Answer: Denied.  The message was sent on September 3, 2025.

74.    Rusch replied the following day that he was working with the Finance Department to allocate grant funds to the program and that the application would be reviewed once those funds were delegated.

<u>Answer</u>: Denied. Rusch replied on September 3, 2025.

75.    On September 22, 2025, after hearing nothing further, Kristyn emailed Rusch again to request a status update.

<u>Answer</u>: Denied for lack of knowledge or information.

76.    Later that day, Rusch responded that the application had been referred to Amal Eltahir, Zach's replacement.

<u>Answer</u>: Admitted.

77.    On September 24, 2025, after receiving no response from Eltahir, Kristyn emailed her asking if she had time for a phone call to discuss the review process.

<u>Answer</u>: Admitted.

78.    Eltahir replied and scheduled a call for 11:15 a.m. that same day.

<u>Answer</u>: Admitted.

79.    During the call, Eltahir stated that there were no remaining grant funds and that it was unclear whether the program was currently funded.

<u>Answer</u>: Denied for lack of knowledge or information.

80.    Eltahir said she was new to the role, had no clear guidance on the program, and did not know who was responsible for reviewing the applications.

<u>Answer</u>: Denied for lack of knowledge or information.

81.    Later that day, Kristyn and Zach requested that their application be sent to the Downtown Revitalization Grant Review Committee so their project at 317 E. Main

Street could proceed, as committee review and approval were required to qualify for grant funds.

<u>Answer</u>: Denied for lack of knowledge or information.

82.    Eltahir agreed to seek direction on how to move forward and later that day sent the application to the committee.

<u>Answer</u>: Denied for lack of knowledge or information.

83.    Around this time, Zach learned that Rath had discussed the grant application at a meeting of the Greater Ottumwa Partners in Progress Board of Directors where a member of the Grant Review team was present.

<u>Answer</u>: Admitted that Mr. Rath fielded questions from a grant review committee member following a Greater Ottumwa Partners in Progress board meeting sometime around September 2025. Denied that Mr. Rath "discussed the grant application at a meeting of the Greater Ottumwa Partners in Progress Board of Directors" as an agenda item.

84.    During that meeting, Rath stated that he believed Zach's project had received enough support and that a grant should not be awarded.

<u>Answer</u>: Denied.

85.    Rath's comments represented improper and unprecedented interference with the grant review process that Zach had never previously witnessed during his time with the City.

<u>Answer</u>: Denied Mr. Rath made said comments. Denied for lack of knowledge or information as to what Zach believes about the grant review process.

86.    On September 26, 2025, Eltahir called Kristyn to notify her that the

committee had approved the grant and that they had a "green light to move forward."

<u>Answer</u>: Admitted.

87.     Following the call, Kristyn emailed Eltahir to request written confirmation of the committee's approval.

<u>Answer</u>: Admitted.

88.     On September 30, 2025, after receiving no reply, Kristyn emailed Eltahir again to follow up on their request for written confirmation.

<u>Answer</u>: Admitted.

89.     On October 1, 2025, Eltahir emailed Kristyn confirming that the Downtown Revitalization Grant Review Committee had approved the application but said the recommendation would now go to the City Council for final approval.

<u>Answer</u>: Admitted.

90.     No previous downtown revitalization grants had been submitted for Council approval because the Council had already adopted policies delegating review authority to the Grant Review Committee.

<u>Answer</u>:  Denied in part for lack of knowledge or information. Denied that there were policies and procedures for delegation of authority in place for funding downtown revitalization grants.

91.     On October 2, 2025, Councilmember Cara Galloway requested copies of Kristyn and Zach's correspondence with Eltahir concerning the grant process, which they provided.

<u>Answer</u>: Denied for lack of knowledge or information.

92.     On October 3, 2025, the City of Ottumwa posted the Council meeting packet

on its public website which included the unredacted grant application containing Kristyn's W-9 form, social security number, tax identification number, and personal residence information.

Answer: Denied that Kristyn's social security number was disclosed. Admitted the personal residence information was disclosed since it is the same as the business address. The remainder of the allegation is admitted.

93.    Kristyn and Zach contacted Councilmember Galloway about the error.

Answer: Admitted.

94.    Galloway shared that she was in the City Clerk's office working to remove the personal information from the public website.

Answer: Admitted.

95.    The packet was ultimately removed and reissued with proper redactions.

Answer: Admitted.

96.    On October 7, 2025, the City Council approved Zach's grant application during its regular meeting.

Answer: Admitted.

97.    Several councilmembers questioned why Zach's application was subjected to a different process than prior grants.

Answer: Admitted to the extent that, after receiving a communication from Mr. Rath about Zach and Kristyn's application, certain council members posed questions prior to the meeting.  Denied that multiple council members "questioned why Zach's application was subjected to a different process than prior grants" during the regular council meeting. Admitted that  council members asked general questions about the application and process

during the regular council meeting. Admitted that one council member "questioned why Zach's application was subjected to a different process than prior grants."

98.    Finance Director Cole O'Donnell made false statements on the record claiming prior grants were illegally reviewed without Council approval and asserting that delegation of review authority would not meet audit standards.

Answer: Denied. The video speaks for itself.

99.    Councilmember Galloway corrected those statements, noting that the Council had already adopted a policy delegating review authority and that the program had previously passed audits without findings.

Answer: Admitted the Councilmember spoke about the policy delegating review of grant applications and that she claimed the program had previously passed audits. Denied the Councilmember "corrected" Mr. O'Donnell. Denied that there was a policy for delegating funding authority. The video speaks for itself.

100.    O'Donnell's statements were defamatory and meant to discredit Zach's prior work for the City.

Answer: Denied.

101.    The meeting was recorded and remains publicly available on the City's official YouTube channel.

Answer: Admitted.

102.    On October 20, 2025, Zach and Kristyn signed and notarized the final grant agreement with the City of Ottumwa after facing substantially more scrutiny and procedural hurdles than prior applicants faced due to Zach's previous complaints to the City identified herein.

Answer: Admitted that Zach and Kristyn signed the final grant agreement October 20, 2025. Denied that the agreement faced "substantially more scrutiny and procedural hurdles than prior applicants faced due to Zach's previous complaints to the City identified herein."

103.    At all times relevant to this action, Cole O'Donnell was an employee and agent of the Defendant City of Ottumwa, acting within the scope of his employment and authority.

Answer:  Admitted.

104.    At all times relevant to this action, Phil Rath was an employee and agent of the Defendant City of Ottumwa, acting within the scope of his employment and authority.

Answer:  Admitted.

105.    At all times relevant to this action, Barb Codjoe was an employee and agent of the Defendant City of Ottumwa, acting within the scope of her employment and authority.

Answer:  Admitted.

## COUNT I
## VIOLATION OF IOWA'S VETERAN'S PREFERENCE ACT
## IOWA CODE CHAPTER 35C

106.    Plaintiff repleads paragraphs 1 through 105 as if fully set forth herein.

Answer:  Defendant repleads and incorporates by reference its answers to all preceding paragraphs.

107.    Iowa Code section 35C.6 provides:

No person holding a public position by appointment or employment, and belonging to any of the classes of persons to whom a preference is granted under this chapter, shall be removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due

notice, upon stated charges, and with the right of such employee or appointee to a review by a writ of certiorari or at such person's election, to judicial review in accordance with the terms of the Iowa administrative procedure Act, chapter 17A, if that is otherwise applicable to their case.

Answer: Admitted this quote is part of text from Iowa Code § 35C.6.

108.    At all relevant times, Plaintiff's employment was within the scope of protection provided to public employees under Iowa Code Chapter 35C.

Answer: Admitted.

109.    At no time during his employment did Plaintiff hold a strictly confidential or policy-making position that would exclude him from Chapter 35C's protections. Plaintiff's job responsibilities were managerial and departmental, not advisory or discretionary. He did not act as a deputy, assistant, or executive proxy to the City Administrator, nor did he have delegated authority to act on the Administrator's behalf.

Answer: Denied.

110.    Defendant terminated Plaintiff's employment effective March 13, 2025, without providing him a pre-termination hearing, due notice, or an opportunity to respond to stated charges of incompetency or misconduct.

Answer:  Denied.

111.    The City was aware of Plaintiff's veteran status prior to and during his employment, and no lawful exemption to the protections of Iowa Code Chapter 35C applied.

Answer: Admitted that the City was aware of Plaintiff's veteran status at all times when it hired him and promoted him over the course of seven years. Denied that "no lawful exemption to the protections of Iowa Code Chapter 35C" apply.

112.    The City of Ottumwa's failure to provide Plaintiff a hearing prior to his

termination constitutes a direct violation of Iowa Code section 35C.6.

Answer:  Denied.

113.    As a result of the City's unlawful termination of his employment in violation of Iowa Code Chapter 35C, Plaintiff has suffered lost wages, lost benefits, and other damages.

Answer: Denied.

## COUNT II
## VIOLATION OF DUE PROCESS
## RIGHTS 42 U.S.C. § 1983

114.    Plaintiff repleads paragraphs 1 through 113 as if fully set forth herein.

Answer: Defendant repleads and incorporates by reference its answers to all preceding paragraphs.

115.    At all times relevant to this action, Defendant was acting under color of state law.

Answer:  Admitted that the City acts under color of state law. Denied that the City engaged in any wrongful actions.

116.   Plaintiff had a protected property interest in his continued public employment as Director of Community Development by virtue of Iowa Code Chapter 35C, which entitled him to notice, an opportunity to be heard, and a hearing prior to any termination based on allegations of misconduct or incompetency.

Answer:   Admitted that Plaintiff had a property interest and certain rights by virtue of Iowa Code Chapter 35C. Denied that the Defendant failed to provide notice, an opportunity to be heard, and a hearing prior to termination.

117.   Defendant deprived Plaintiff of his right to procedural due process as

guaranteed by the Fourteenth Amendment to the United States Constitution.

<u>Answer</u>: Denied.

118.   Specifically, Defendant terminated Plaintiff's employment on March 13, 2025, without prior notice, without informing him of any charges against him, and without affording him any meaningful opportunity to respond or be heard. Plaintiff was not provided with a hearing or any form of pre-termination process.

<u>Answer</u>:  Denied.

119.   The actions taken by Defendant were not the result of any valid governmental interest, but were instead arbitrary, capricious, and retaliatory in nature.

<u>Answer</u>:  Denied.

120.   Defendant's failure to provide constitutionally required due process protections constitutes a violation of 42 U.S.C. § 1983.

<u>Answer</u>: Denied.

121.   As a result of the Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

<u>Answer</u>: Denied.

**<u>COUNT III</u>**
**FIRST AMENDMENT – FREE SPEECH VIOLATION**
**42 U.S.C. § 1983**

122.   Plaintiff repleads paragraphs 1 through 121 as if fully set forth herein.

<u>Answer</u>: Defendant repleads and incorporates by reference its answers to all preceding paragraphs.

21

123.    Plaintiff engaged in constitutionally protected speech under the First Amendment to the United States Constitution when he communicated with the Ottumwa City Council in February 2025.

Answer: Denied.

124.    Specifically, on February 21, 2025, Plaintiff emailed the City Council to inform them that he had been placed on a PIP and was seeking employment elsewhere solely because of that action.

Answer: Admitted Zach communicated with the City Council about an internal matter on February 20, 2025. The email speaks for itself. Denied that the speech was constitutionally protected.

125.    Plaintiff expressed his serious objections to the PIP and to the investigation that preceded it, and he did so as a private citizen addressing a matter of public concern: the conduct and transparency of City administration in managing personnel.

Answer: Admitted that Zach stated in his email that he had "significant frustrations with the content of the [PIP] and the investigation that preceded it…" The emails speak for themselves. Denied that the speech was constitutionally protected, but was speech on an internal matter.

126.    Prior to that communication, Plaintiff had informed Rath of his intention to be transparent with the Council about the PIP and his reasons for seeking other employment.

Answer:  Admitted that Zach informed Mr. Rath that he was going to inform the Council about his PIP and that he was seeking other employment. Denied that the speech was constitutionally protected, but was speech on an internal matter.

127.    Rath explicitly requested that Plaintiff not discuss his PIP with the Council.

<u>Answer</u>: Denied.

128.    Plaintiff nevertheless exercised his First Amendment rights to speak openly and truthfully about the administration's treatment of him and its handling of personnel issues affecting public confidence in city government.

<u>Answer</u>: Denied.

129.    Shortly after Plaintiff's communication to the Council, Defendant undertook a series of adverse actions culminating in his termination on March 13, 2025.

<u>Answer</u>:  Denied.

130.    These actions were motivated, at least in substantial part, by Plaintiff's protected expression.

<u>Answer</u>: Denied.

131.    Defendant's conduct amounts to unlawful retaliation in violation of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

<u>Answer</u>: Denied.

132.    As a result of the Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

<u>Answer</u>: Denied.

### COUNT IV
### RETALIATION FOR WHISTLEBLOWING
### VIOLATION OF IOWA CODE § 70A.29

133.    Plaintiff repleads paragraphs 1 through 132 as if fully set forth herein.

Answer: Defendant repleads and incorporates by reference its answers to all preceding paragraphs.

134.    Plaintiff was a public employee of a political subdivision of the State of Iowa entitled to protection under Iowa Code section 70A.29.

Answer: Admitted.

135.    As set forth above, Plaintiff objected to the City's investigative process, reported violations of City policy, and complained about mismanagement of City operations and abuses of authority by senior officials.

Answer: Denied that Plaintiff engaged in protected actions delineated in Iowa Code § 70A.29.

136.    Plaintiff reported these concerns to public officials.

Answer: Admitted Zach communicated with the City Council, who are public officials. Denied that Plaintiff engaged in actions within the scope of Iowa Code § 70A.29.

137.    Each of these disclosures constituted protected whistleblower activity under Iowa Code section 70A.29.

Answer: Denied.

138.    Defendant violated Iowa Code section 70A.29 by disciplining and firing Plaintiff as a reprisal for his protected disclosures.

Answer: Denied.

139.    As a direct and proximate result of Defendant's acts of retaliation,

Plaintiff  has suffered damages including but not limited to lost wages and benefits.

<u>Answer</u>: Denied.

## **JURY DEMAND**

Defendant, City of Ottumwa, requests a jury trial.

## **AFFIRMATIVE DEFENSES**

1. Failure to state a claim upon which relief may be granted.

2. At all relevant times to the alleged acts stated in the Petition for Writ of Certiorari, Defendant acted in conformity with all applicable rules, laws, and regulations and any actions taken in respect to the Plaintiff were undertaken for legitimate, non-discriminatory and non-retaliatory business reasons.

3. The Defendant, City of Ottumwa, is a municipality and all other involved individuals were employees of the City, at all times material to this cause of action acting within the scope of their respective positions and each acting in good faith in reliance upon Iowa Code Chapter 670 and therefore are entitled to immunity.

4. Plaintiff was at fault, entirely and independently responsible, due to his violation of workplace rules and department policy and his actions were the sole proximate cause of his termination, including alleged injuries. Plaintiff was terminated due to "gross misconduct in his interaction with a subordinate via telephone on March 3, 2025" while under a PIP.

5. Plaintiff is not entitled to protection under Iowa Code Chapter 35C because he held a strictly confidential position, reporting directly to the appointing officer. Iowa Code § 35C.8.

6.  The Defendants held an honest belief that Plaintiff engaged in the gross misconduct which resulted in the decision to terminate his employment (see e.g., *Feeback v. Swift Pork Co.*, 938 N.W.2d 340 (Iowa 2023).)

7.  Plaintiff's speech was on purely internal matters and was not a matter of public concern (see, e.g., *Connick v. Myers*, 461 U.S. 138 (1983)).

8.  If it is determined that Plaintiff engaged in misconduct during employment that would have resulted in termination had Defendants known of it at the time, any remedies available to Plaintiff should be limited in accordance with the after acquired evidence doctrine (see e.g., *McKennon v. Nashville Banner Publishing Co*., 513 U.S. 352 (1995)).

9.  Defendants would have made the same employment decision even in the absence of any alleged unlawful motive.

10. Some or all of Plaintiff's claims are barred by the doctrines of waiver, estoppel, judicial estoppel, election of remedies, or unclean hands.

11. Plaintiff may have failed to mitigate any alleged damages.

12. Discovery is continuing and Defendant reserves the right to amend its answer and to raise any other additional affirmative defenses.

/s/ Amy L. Reasner
AMY L. REASNER, AT0006390
BRYCE E. SCHULTE, AT0016528
      of
LYNCH DALLAS LEGAL
316 Second Street SE, Suite 124
P.O. Box 2457
Cedar Rapids, Iowa 52406-2457
Telephone 319.365.9101
Facsimile  319.365.9512
E-Mail:   areasner@lynchdallas.com
          bschulte@lynchdallas.com

ATTORNEYS FOR DEFENDANT